**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAARON SHEARS,                          )
                                        )
            Plaintiff,                  )      Case No. 1:21-cv-000246
                                        )
    vs.                                 )
                                        )
SCI FOREST, LIEUTENANT                  )
HAGGERTY, COL. CALTAGARONE,             )
CAPTAIN DAVIS, SCHIAFONE,               )
PACK, and YENZI,                        )
                                        )
            Defendants.                 )

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Daaron Shears ("Shears"), who at all relevant times was an inmate housed at the State Correctional Institution at Forest ("SCI-Forest"), brings this lawsuit under 42 U.S.C. § 1983 against Defendants SCI-Forest, Lieutenant Haggerty, Col. Catagarone, Captain Davis, Schiafone, Pack, and Yenzi (collectively, "Defendants") in which he asserts numerous violations of his civil rights. Shears contends that his First, Fourth and Eighth Amendment rights were violated when, against prison policy, he was strip searched in an open hallway of the Restricted Houseing Unit ("RHU") at SCI-Forest, exposing his buttocks and genitals to other inmates and corrections officers.

Presently pending is Defendants' Motion to Dismiss Shears' Second Amended Complaint (ECF No 51). For the reasons that follow, their motion will be granted in part and denied in part.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case as authorized by 28 U.S.C. § 636. *See* ECF Nos. 33, 39.

### I.   Relevant Procedural History

After Shears initiated this lawsuit on August 31, 2021, the case was closed due to various deficiencies.  After curing these deficiencies, Shears filed an Amended Complaint (ECF No. 13) which included a grievance and follow up documents (ECF No. 13-3), a Prison Rape Elimination Act ("PREA") Inmate Notification Form (ECF No. 13-2), and several related documents signed by Shears (ECF No. 13-1).[2] After Defendants moved to dismiss the Amended Complaint (ECF No. 29),  Shears sought and was granted leave to file a second amended complaint (ECF Nos. 37, 40), which was docketed on May 3, 2022 (ECF No. 43), and is the operative complaint in this case.

Defendants filed a Motion to Dismiss the Second Amended Complaint (ECF No. 51) and supporting Brief (ECF No. 52), to which Shears filed a Response (ECF No. 61).[3]  Thus, the motion has been fully briefed and is ready for disposition.

### II.   Factual Background

On July 27, 2021, while incarcerated at SCI-Forest, Shears was transported from the Behavior Management Unit to medical triage by prison staff members, including defendants Haggerty, Schiafone, Yenzi, and Catagarone.  ECF No. 43, ¶¶ 1-2.  After Shears was medically cleared, Haggerty contacted  Davis to ask where Shears should be housed.  *Id.* ¶ 3.  Davis allegedly directed Haggerty to take Shears to "K-unit," which is in the RHU.  *Id.*  Shears was fearful of being

---

[2] Although Shears' Second Amended Complaint does not include the same exhibits that are attached to the Amended Complaint, the Court will review these exhibits as part of the record. Defendants refer to these exhibits in their Brief.

[3] In his Response to the Motion to Dismiss, Shears attempts to assert a due process violation. *See* ECF No. 61, ¶ III.8.  An attempt to add a new claim in a responsive brief is procedurally improper and cannot be considered in resolving Defendants' motion.  Likewise, the Court cannot consider the three Declarations filed by Shears (ECF Nos. 62, 66, 67) subsequent to his response to the motion to dismiss.  The Court generally may consider only the allegations of the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

returned to K-unit because he claims he had been mentally and physically abused by correctional officers there. *Id.* ¶ 6. Shears admits that he was "aggressive and headbutted correctio[n] officer Gallagher [sic]." *Id.* ¶ 6. Because Shears became aggressive, Haggerty called for a restraint chair. *Id.* at ¶ 4. Shears was placed in the restraint chair with the straps excessively tight. *Id.* ¶ 5.

Shears was escorted to K-unit in the restraint chair by Catagarone and others. ECF No. 43 ¶ 7. Once they entered K-unit, Haggerty directed Catagarone, Pack, Yenzi, and Shiafone to wheel Shears into a hallway which would make him visible to all inmates in K-unit, lay Shears down on a sheet in the hallway, and conduct a strip search. *Id.* ¶¶ 8-10. While Shears was handcuffed and shackled and lying on the sheet on the floor, Catagarone cut Shears' clothing off with scissors to conduct the search, exposing his buttocks and genitals. *Id.* ¶¶ 10, 11. Shears protested that the strip search was conducted outside of "the stripping cage". *Id.* ¶ 12. Other inmates in K-unit, as well as Officers Pack, Schiafone, and Yenzi, laughed while they watched the strip search. *Id.* ¶ 11. According to Shears, "Defendant lieutenant [sic] Haggerty and his subordinate Defendant catagarone7t [sic] maliciously, knowliy [sic] and intentionally used the stripping/cutting plaintiff DAARON SHEARS [sic] clothing on k-unit as a form of humiliation or punishment in retailting [sic] for the minor infraction of headbutting correctional officer gallagher [sic]." *Id.* ¶ 15.

Shears states that the incident caused him severe mental anguish and he submitted a sick call slip on July 30, 2021, because he "suffers mental anguish from the above allegations, in the [sic], Plaintiff DAARON SHEARS has been severely depressed, excessively eating and sleeping." ECF No. 43 at 5. Shears was offered SCI-Forest Rape Crisis Counseling by Paul Connors on August 2, 2021, and was provided services at "A Safe Place." *Id.* In addition, Shears states that he was seen by SCI-Forest LPM Doctor Bruce Simon on August 20, 2021, to discuss his mental health as it related to the strip search incident. *Id.*

On July 27, 2021, Shears filed Grievance #938551 related to this incident.   ECF No. 13-3.  He also sought to preserve video footage of the incident that was taken. ECF No. 43, p. 5 ("Note").  On July 30, 2021, Shears filed a written statement of sexual abuse under the PREA.[4]  In response to Grievance #938551 a Rejection Form was issued on August 2, 2021, stating that the grievance was being forwarded to the Security Office and to the PREA Compliance Manager for initiation of an investigation. ECF No. 13-3, p. 2.   Shears alleges that he exhausted his administrative remedies.  ECF No. 43, ¶ 22.

Shears seeks compensatory and punitive damages, as well as a declaratory judgment in his favor and a permanent injunction to stop strip searches outside the strip cage. ECF No. 43, p. 20. As reflected on the docket, Shears was transferred from SCI-Forest to SCI-Rockview after the commencement of this action.

## III.    Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court does not determine whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."

---

[4] While Shears refers to this document as "Exhibit C," there is no Exhibit C attached to the Amended Complaint or the Second Amended Complaint.  *See* ECF No. 43, ¶ 18. The Amended Complaint does contain an attachment as an exhibit called "PREA Investigation Inmate Notification" which includes the notation "inmate Shears refused to sign."  ECF No. 13-2.

*Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do."  *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Emp. Ret. Sys. v. The Chubb Corp*., 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist*., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555.  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. WarminsterTwp*., 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*,

556 U.S. at 679.  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)*, abrogated on other grounds by Twombly,* 550 U.S. at 557, *as recognized in In re Lipitor Antitrust Litig.,* 868 F.3d 231, 249 (3d Cir. 2017).  The Court may consider facts and make inferences where it is appropriate.

Finally, because Shears is proceeding *pro se*, the allegations in the Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").  Thus, the court may consider facts and make inferences where it is appropriate.  But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, No. 2:17-CV-01624, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd,* 826 Fed. App'x. 227 (3d Cir. 2020) (citations omitted); *see also Baez v. Mooney*, No. 1:20-CV-0009, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

IV.    **Discussion**

Proceeding under 42 U.S.C. § 1983, Shears alleges that his First, Fourth, and Eighth Amendment rights were violated when, against prison policy, he was strip searched in an open hallway of the RHU at SCI-Forest.  Section 1983 "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012). Section 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Shears claims  that Defendant Haggerty violated his Fourth Amendment rights by ordering a strip searchto be conducted in an open hallway.  In addition, he alleges that in violation of his First Amendment rights, Haggerty ordered the strip search in retaliation for Shears' conduct of "headbutting" another prison employee. Finally, Shears asserts Haggerty violated his Eighth Amendment rights by ordering a strip search that employed excessive force and by being deliberately indifferent in various respects.[5]

Regarding defendant Catagarone, who conducted the strip search, Shears asserts Eighth Amendment claims for excessive force (Count 1), deliberate indifference (Count 2), "intrusive of prisoner privacy" (Count 3)  and sexual abuse (Count 4). Shears claims that defendants Pack,

---

[5] Shears alleges four counts against Haggerty; a violation of the Fourth Amendment (Count 1); a First Amendment violation (Count 2); and Eighth Amendment violations for excessive force (Count 3) and deliberate indifference (Count 4).  The Second Amended Complaint uses the same count numbers for the claims against the other defendants, *e.g.*, there are four claims against different defendants identified as "Count 1."

Shiafone, and Yenzi violated his Eighth Amendment rights by failing to intervene during the strip search (a separate Count 1 for each). Finally, with respect to Defendant Davis, Shears asserts Eighth Amendment claims for excessive force claim (Count 1) and deliberate indifference (Count 2) because he directed Haggerty to order Catagarone to conduct the search in the manner alleged and was deliberately indifferent to his medical needs.

Defendants make several arguments in support of their motion to dismiss, including the following: Shears failed to exhaust administrative remedies; Defendants are entitled to sovereign immunity; a prisoner has no right to privacy; Shears failed to state a claim under the First or the Eighth Amendments; and there is no cause of action for a "failure to intervene" under the Eighth Amendment. As relevant to the resolution of their motion, these arguments will be addressed below.

### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and when raised by a defendant it constitutes a "threshold issue" to be addressed by the court. *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018).

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 578 U.S. 632,

638-39 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)).  Courts are not given discretion to decide whether exhaustion should be excused, *see Ross*, 578 U.S. at 640-41, and there is no exception to the exhaustion requirement based on "futility".  *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

Importantly, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion."  *Jones*, 549 U.S. at 218; *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) ("prison grievance procedures supply the yardstick for measuring procedural default").  Thus, the procedural requirements for exhaustion in a given case "are drawn from the polices of the prison in question rather than from any free-standing federal law."  *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

Failure to exhaust is an affirmative defense under the PLRA. *See Jones v. Bock,* 549 U.S. 199, 216 (2007). Thus, it is Defendants' burden to prove that Shears failed to exhaust his available administrative remedies.  *See Rinaldi ,* 904 F.3d at 268.

In this case, because Shears' Grievance #938551 included sexual abuse allegations,  it was "rejected" (*see* ECF 13-3) and transferred to the facility security office and PREA coordinator for investigation.  Defendants argue that Shears did not exhaust his administrative remedies because the PREA investigation was closed on September 15, 2021, after Shears initiated this action on August 31, 2021.[6] Thus, Defendants contend, because Shears did not exhaust his administrative remedies before the commencement of this action, it must be dismissed.

Notably, however, Defendants fail to identify any portion of the prison's policies that sets forth when a grievance is exhausted after it is "rejected" and transferred for a PREA investigation.

---

[6] In his response to the motion to dismiss, Shears alleges that he was told that the PREA investigation was complete on August 15, 2021.  *See* ECF No. 61, p. 5.

Thus, Defendants have not met their burden to prove that Shears failed to exhaust his administrative remedies, and their motion to dismiss based on failure to exhaust will be denied without prejudice to renew this issue, as appropriate, at a later stage of this proceeding.

B. <u>Request for Permanent Injunctive Relief is Moot</u>

Shears seeks a permanent injunction that bars strip searches conducted outside of a stripping cage. ECF No. 43, p. 20, ¶ 2.  Because Shears is no longer detained at SCI-Forest, he cannot be subjected to a strip search in the RHU hallway at SCI-Forest which forms the basis for his requested injunctive relief.  Accordingly, the injunctive relief requested is moot. *See, e.g., Sutton v. Rasheed*, 323 F.3d 236, 248-50 (3d Cir. 2003) (injunction claims are generally moot when an inmate is transferred from the facility in which his injunctive claims arose) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993)).

C. <u>SCI-Forest is not a Proper Defendant</u>

While Shears names SCI-Forest as a defendant he does not make any specific allegations against it.  Even if he had, however, SCI-Forest is a correctional facility and not a "person" within the meaning of § 1983. *See Stanford v. Walton*, No. 16-CV-1584, 2019 WL 5068666, at *8 (W.D. Pa. Oct. 9, 2019) (citing *Mincy v. Deparlos*, No. 1:08-CV-0507, 2011 WL 1120295, at *7 (M.D. Pa. March 24, 2011) ("[A] prison or correctional facility is not a 'person' within the meaning of § 1983"), *aff'd,* 497 F. App'x 234, 239 n. 5 (3d Cir. 2012)).  Thus, SCI-Forest will be dismissed with prejudice as it is not a proper defendant.

D. <u>The Individual Defendants Cannot be Sued in Their Official Capacities</u>

As Defendants correctly state, the Eleventh Amendment provides immunity against official capacity claims seeking monetary damages. The Eleventh Amendment proscribes actions for money damages in the federal courts against states, their agencies, and state officials acting in their

official capacities.  *See Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *O'Donnell v. Pennsylvania Dep't of Corr.,* 790 F. Supp. 2d 289, 305 (M.D. Pa. 2011), *aff'd,* 507 F. App'x 123 (3d Cir. 2012) (state employees acting in their official capacity).

Shears does not state whether he is suing Defendants in their individual or official capacities.  To the extent that Shears is asserting claims for monetary relief against Defendants in their official capacities, however, all such claims will be dismissed with prejudice.

E.   First Amendment Retaliation Claim against Haggerty

Shears alleges that Haggerty ordered an improper strip search in retaliation against him because he " headbutted" one of the correctional officers as they were restraining him for transport to the RHU.

A prisoner asserting a retaliation claim must allege facts demonstrating that (1) he engaged in constitutionally protected conduct; (2) prison officials took an adverse action against the plaintiff that was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the existence of "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000)) (alteration in original); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Shears' retaliation claim against Haggarty fails because he does not present any facts to support that he engaged in constitutionally protected conduct. Shears admits that he became aggressive and headbutted a correctional officer.  He has not attempted to argue, nor could he, that this is constitutionally protected activity.  Rather, in his Response to the Motion to Dismiss Shears attempts to refashion his claim as one for retaliation because of his participation in a Black Lives

Matter group. *See* ECF No. 61, p. 4 ¶ 10.  These allegations are not pleaded in the Second Amended Complaint, however, and cannot be considered in connection with the Court's resolution of the Motion to Dismiss.  More importantly, they are wholly inconsistent with the allegations in each of Shears' verified complaints, all three of which allege that Haggerty retaliated against him because of Shears' "headbutting" conduct.  Therefore, the retaliation claim against Haggerty will be dismissed with prejudice.

      F.   <u>Fourth Amendment Claim Against Haggerty</u>

Shears asserts that the strip search ordered by Haggerty in the hallway of the RHU constituted an unreasonable search in violation of the Fourth Amendment.  Shears alleges that the search ordered by Haggerty was unreasonable because he directed Catagarone to perform the search by cutting off Shears' clothing while Shears was on the floor in an open hallway, exposing Shears' buttocks and genitals to other inmates.

A plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right.  *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct.  *See, e.g.*, *id*.; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (*en banc*)).

Here, Haggerty was personally involved in Shears' strip search because not only did he order it to take place, but according to Shears, Haggerty directed where and how it was to be conducted.

Defendants contend that the Fourth Amendment does not apply to searches of prisoners because there is no expectation of privacy in prison.  *See Hudson v. Palmer*, 468 U.S. 517, 526-28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.")  ECF No. 52, p. 7.

Inmates have a limited right of privacy. "In *Bell* [*Bell v. Wolfish*, 441 U.S. 520 (1979)], the Court analyzed a Fourth Amendment claim under the '*assum[ption]* for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility.'" *Parkell v. Danberg*, 833 F.3d 313, 324 (3d Cir. 2016).  (quoting *Bell*, 441 U.S. at 545 (emphasis added)).  "[A] right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context. Our conclusion 'necessarily entails a balancing of interests.'"  *Hudson v. Palmer*, 468 U.S. at 527.  "[T]he Fourth Amendment therefore grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." *Parkell*, 833 F.3d at 325.  In balancing the interests of bodily privacy and prison safety, the Court "must give considerable weight to the 'place in which [the search] is conducted'—prisons being 'places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct,' —and considerable deference to 'the justification for initiating it.'" *Id.* at 326 (quoting *Hudson*, 468 U.S. at 526).

"[I]mpinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Id.* at 326. "While a strip search may constitute a 'significant intrusion on an individual's privacy,' *see United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), in the prison or detention facility setting, where officials conduct searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment." *Fatir v. Phelps*, No. 18-CV-933, 2019 WL 2162720, at *6 (D. Del. May 17, 2019) (citing *Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010)).

Thus, in and of itself, a prison strip search is not unconstitutional. "The Supreme Court has held that prison officials may conduct visual body cavity searches in a reasonable manner." *Millhouse v. Arbasak*, 373 F. App'x 135, 137–38 (3d Cir. 2010) (citing *Bell,* 441 U.S. at 559–60). Furthermore, "[T]he searches, even if embarrassing and humiliating, do not violate the constitution." *Millhouse*, 373 F. App'x at 137–38. *See also, e.g.*, *Del Raine v. Williford,* 32 F.3d 1024, 1038–41 (7th Cir. 1994) (rejecting claim that rectal probe performed in lobby area of prison hospital was "unnecessarily brutal, painful and humiliating"); *Michenfelder v. Sumner,* 860 F.2d 328, 332 (9th Cir. 1988) (upholding policy of conducting visual bodily cavity searches every time prisoner leaves or returns to maximum security unit or moves within unit).[7]

---

[7] When a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, No. 08-CV-2023, 2012 WL 1067909, at *17 n.6 (D.N.J. Mar. 29, 2012) (stating that, in addition to a possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").

Here, Shears does not allege that simply ordering a strip search was unconstitutional; rather, he contends that the location of the strip search and the removal of his clothes in an area visible to other inmates was unreasonable and violated his Fourth Amendment rights.  He contends that he should have been placed him in a "stripping cage" to perform the strip search.

At issue is whether Haggerty's order to conduct a strip search in the hallway of the RHU, thereby exposing Shears' private parts to other inmates, was conducted for legitimate penological reasons or represents an unconstitutional violation of Shears' limited right to privacy.  Whether as conducted, the strip search was necessary for a legitimate penological interest cannot be determined without a full factual record.

Therefore, the motion to dismiss as to the Fourth Amendment claim against Haggerty is denied.

G.  <u>Eighth Amendment Claims related to the Search</u>

Shears asserts that the strip search represents cruel and unusual punishment in violation of his Eighth Amendment rights. He claims that Davis directed Haggerty to order Catagarone to conduct the search on the floor in the hallway and remove his clothing as part of the search.[8] Haggerty is allegedly liable based upon his order to Catagarone.  Further, Shears alleges that Pak, Shiafone and Yenzi failed to intervene or protect him.  Shears contends that all Defendants acted with deliberate indifference by ordering, conducting and/or failing to intervene in the strip search in full view of other inmates while taunting him.

Defendants argue that because Shears has failed to plead facts that support the necessary elements of an Eighth Amendment claim, he has failed to state a claim upon which relief can be granted against any of the defendants.

---

[8] Shears does not assert a Fourth Amendment claim against Davis.

Two requirements must be met to prove a violation of the Eighth Amendment: First, the deprivation of rights alleged must be, objectively, "sufficiently serious," and second, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).  To satisfy the second prong of the test, a prison official must have a "sufficiently culpable state of mind." *Id*. (citations omitted).  "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id*. "A prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id. at* 825.

As the Court of Appeals for the Third Circuit has explained:

> "Deliberate indifference," therefore, requires "obduracy and wantonness," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (stating that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (parallel citations omitted).

1. Eighth Amendment Claims against Davis, Haggerty, and Catagarone

Shears alleges that after he acted aggressively, he was placed in a restraint chair[9] and wheeled to a hallway in the RHU where Catagarone followed an order from Haggerty, who was in turn directed to do so by Davis, to perform a strip search.

Shears alleges that the manner in which the search was conducted, *i.e.*, in an open hallway visible to others, represents excessive force. "In order for a prisoner to state an Eighth Amendment

---

[9] Shears asserts that the straps of the restraint chair were excessively tight, but his excessive force claim with respect to each of these defendants relates solely to the manner and location of the search itself.

claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm." *Fatir v. Phelps*, No. 18-CV-933, 2019 WL 2162720, at \*6 (D. Del. May 17, 2019) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "[T]he factors to be considered in determining when the excessive use of force gives rise to a cause of action under § 1983: (1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) [w]hether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Graham v. Connor*, 490 U.S. 386, 390 (1989) (citations and internal quotations omitted).

Shears acknowledges that prior to the search, he was placed in a restraint chair for being "passive aggressive" and then continued to act aggressively and "headbutted" a correctional officer. Shears then describes the search as follows: "[Catagarone] forced plaintiff on an open hallway floor while cuffed from behind and shackled, and cut his clothing off while having prior knowledge K-A unit inmates were 'watching and laughing' at plaintiff." ECF No. 43, p. 10.

Notably, however, Shears does not allege Catagarone was physically abusive or engaged in unnecessary force as part of the search. Shears does not claim that he sustained any physical injuries. Rather, he complains that the strip search was intentionally performed in front of others and that he sustained "mental anguish" as a result.

The facts pleaded by Shears fail to state an Eighth Amendment claim based on excessive force. Simply put, there are no allegations that the search was conducted in a physically abusive manner or with undue force, or that he was physically harmed as a result. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011); *Payton v. Vaughn*, 798 F. Supp. 258, 261–62 (E.D. Pa.

1992) ("As discussed before, to establish that prison conditions violate the eighth amendment, a plaintiff must allege facts showing that such conditions result in the wanton and unnecessary infliction of pain, or are grossly disproportionate to the severity of the crime warranting punishment. . . . The plaintiff does not allege that the search was conducted in an abusive fashion, or with unnecessary force. Plaintiff only alleged that he experienced some embarrassment through the strip search. Embarrassment alone because of casual observances by others does not offend the constitution.") (citations omitted).

Further, as it relates to Catagarone, the claim of "instrusive of prisoner privacy" claim fails as well.  As discussed previously, a strip search in a prison setting is not unconstitutional, even when it is embarrassing or humiliating.  Moreover, Shears pleads that Catagarone was directed by his superior, Haggerty, to conduct the search in the manner performed.

Similarly, Shears' claim of sexual abuse against Catagarone also must be dismissed. While he characterizes the search as sexual abuse, his Second Amended Complaint includes no factual allegations that support this claim.  He does not allege that Catagarone performed a sexual act, engaged in inappropriate contact or touching or engaged in any other conduct that could be perceived as sexual in nature.  Rather, upon the order issued by Haggerty, he removed Shears' clothing and conducted a search.  This does not represent a constitutional violation.  *See Watson v. Beard,* No. 3:09-CV-87, 2013 WL 4648323, at *9 (W.D. Pa. Aug. 28, 2013), *aff'd sub nom. Watson v. Fisher*, 558 F. App'x 141 (3d Cir. 2014); *Millhouse*, 373 F. App'x at 137.

Finally, while Shears asserts separate claims against Davis, Haggarty, and Catagarone for "deliberate indifference," there is no separate cause of action for deliberate indifference.

For these reasons, these Eighth Amendment claims will be dismissed.

2.   Failure to Intervene against Pak, Shiafone, and Yenzi

Shears alleges that corrections officers Pak, Shiafone, and Yenzi inflicted cruel and unusual punishment by "intentionally, knowingly and recklessly fail[ing] or refus[ing] to intervene" prior to the removal of his clothing. Assuming that the strip search was a constitutional violation, the Court must analyze whether Pak, Shiafone, and Yenzi acted with deliberate indifference for Shears' health and safety.  In other words, it must be determined if they were cognizant of a substantial risk of serious harm and disregarded it by failing to take reasonable measures to abate it.  *See Farmer*, 511 U.S. at 825.

The Court has determined that there was no excessive force used in connection with the search or the existence of any other form of cruel and unusual punishment.  Thus, these defendants cannot be liable for a failure to intervene.  *See Nifas v. Coleman*, 528 Fed.App'x. 132, 135–36 (3d Cir. 2013).  As such, the claim against them will be dismissed.

H.   Eighth Amendment Claim of Deliberate Indifference to Medical Needs against Davis, Haggerty and Catagarone

Shears argues that Davis, Haggerty and Catagarone were deliberately indifferent to his medical needs when they denied him psychological attention in the aftermath of the strip search. *See* ECF No. 43, pp. 9, 11.

Shears' claim is undermined by his own allegations in the Second Amended Complaint. He states that he sustained "mental anguish" and severe depression due to the strip search. However, he admits that he received treatment, including being seen by a "psych doctor" on August 20, 2021, to discuss his depression.  Further, he alleges, he was offered rape crisis counseling as well as services provided by "A Safe Place." Simply put, his allegations explicitlyt state that he requested and received mental health services.

Moreover, he does not plead any facts that support a contention that any of the named defendants, none of whom are medical personnel, were responsible for, impeded or denied medical services to him.   A plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right.   *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Thus, Shears  has failed to state a claim on which relief may be granted, requiring this claim to be dismissed.

## I.   Claim regarding Department of Corrections Policy

Defendants note that "Plaintiff's Complaint appears to include assertions of a violation of the D.O.C. Code of Ethics."   ECF No. 52, p. 15.   This allegation is made against all Defendants. They contend that Shears cannot assert a claim under the Department of Corrections Code of Ethics because there is no plausible constitutional violation associated with the lack of adherence to prison regulations.   They are correct.

A prison policy manual does not have the force of law and cannot be the basis for a constitutional violation.   *See Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2008). "[A]gency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'" *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 155 (3d Cir. 2004) (citation omitted).   Furthermore, "[A] one-time violation of an internal policy does not automatically rise to the level of a constitutional violation."   *Fatir v. Phelps*, No. CV 18-933-CFC, 2019 WL 2162720, at *7 (D. Del. May 17, 2019).

Thus, to the extent that Shears has attempted to assert a claim based on a Code of Ethics or any other DOC regulation, any such claim is dismissed with prejudice.

## V.   Amendment

When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff a chance to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Under the circumstances presented here, any amendment would be futile. Shears has already twice amended his complaint.  As discussed herein, all claims brought against the individual defendants in their official capacities are barred by the Eleventh Amendment immunity; his claims for injunctive relief are not cognizable; his claim against SCI-Forest is not cognizable; and his First and Eighth Amendment claims are wholly undermined by the very facts that he has pleaded or otherwise cannot be remedied by further amendment as a matter of law.

## VI.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 51) will be granted in part and denied in part as follows:

- The motion to dismiss all claims against Defendants SCI-Forest, Davis, Catagarone, Pack, Shiafone and  Yenzi will be granted with prejudice.

- The motion to dismiss the First Amendment, Eighth Amendment and "deliberate indifference" claims against Defendant Haggerty will be granted with prejudice.

- The motion to dismiss with respect to Shears' claim for injunctive relief will be granted with prejudice.

- The motion to dismiss with respect to any claim asserted under the DOC Code of Ethics will be granted with prejudice.

- The motion to dismiss will be denied with respect to the Fourth Amendment claim against Defendant Haggerty.

An appropriate order will follow.


Dated: November 7, 2022                    BY THE COURT:


                                           s/ Patricia L Dodge
                                           PATRICIA L. DODGE
                                           United States Magistrate Judge