**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAARON SHEARS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:21-cv-246 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| LIEUTENANT HAGGERTY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**[1]

Before the Court is the Motion for Summary Judgment filed by Defendant, Lieutenant Stephen Haggerty ("Haggerty"). For the reasons that follow, Defendant's motion will be granted.

**I.      Relevant Procedural History**

Plaintiff Daaron Shears ("Shears"), an inmate in the custody of the Pennsylvania Department of Corrections, brings this *pro se* civil rights action under 42 U.S.C. § 1983, concerning events that occurred at the State Correctional Institution at Forest.

The operative complaint in this case is Shears' Second Amended Complaint, ECF No. 43, in which he asserted claims against Haggerty, S.C.I. Forest, and five other prison staff members. In response to that complaint, Defendants filed a motion to dismiss (ECF No. 51). Their motion was granted with respect to all claims against S.C.I. Forest and the other five prison staff members, (ECF No. 75), and they were terminated from this action. *Id.* In addition, all claims against Haggerty were dismissed with prejudice other than one: a Fourth Amendment claim related to a strip search of Shears that Haggerty ordered. *Id.* Haggerty then filed an Answer to the Second

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

Amended Complaint, (ECF No. 76), and the parties subsequently engaged in discovery which necessitated multiple rulings from the Court.[2]

Haggerty has filed a Motion for Summary Judgment which is supported by a Brief, a Concise Statement of Material Facts, and an Appendix of exhibits, ECF No. 109 (ECF Nos. 106, 107, 108 and 109, respectively). Shears has filed a Brief in in Opposition to the Motion for Summary Judgment, (ECF No. 117), which includes a Response, a Statement of Disputed Facts, and a response to Haggerty's Concise Statement of Material Facts. Shears has also submitted two affidavits to the Court (ECF Nos. 124, 129). Thus, Haggerty's motion is ripe for consideration.

## II.    Factual Background[3]

On July 27, 2021, Shears reported to prison staff that he had swallowed a pen. ECF No. 108 ¶ 5; ECF No. 117 at 4 ¶ 5.[4] He was handcuffed, searched in his cell, and then escorted to the body scanner. ECF No. 108 ¶ 7; ECF No. 117 at 4 ¶ 7. During his escort, Shears repeatedly alleged that he had swallowed a bag of Tylenol. ECF No. 108 ¶ 10; ECF No. 109-7; ECF No. 117 at 4 ¶ 10. He had been given 13 Tylenol tablets on July 23, 2021. ECF No. 108 ¶ 11; ECF No. 117 at 4 ¶ 11. Shears was then taken to medical for evaluation. ECF No. 109-7. After assessment, he was cleared by medical. ECF No. 108 ¶ 14; ECF No. 109-7.

When Shears was informed that he had been ordered to return to a cell on K Unit, he became argumentative, non-compliant, went limp and refused to walk. ECF No. 108 ¶ 16; ECF

---

[2] ECF Nos. 93, 96, 102, 119, and 128.

[3] These facts are derived from Haggerty's Concise Statement of Material Facts; Shears' Opposition to Haggerty's Concise Statement; and the video of the cell extraction provided by Haggerty (ECF No. 109-7).

[4] Shears admits this fact "in part" and denies it "in part," without explanation, in violation of Local Rule of Civil Procedure 56.C.1.b. ECF No. 117 at 4 ¶ 5. However, other parts of his pleading make clear that he does not dispute this fact. *Id.* at 12 ("… Plaintiff showed CO Gallagher a pen then swallowed that ….")

No. 109-7.[5] Shears was then placed in a restraint chair for transport. ECF No. 108 ¶ 17; ECF No. 109-7. While officers were securing Shears in the chair, he became physically combative and verbally threatening. ECF No. 108 ¶ 18; ECF No. 109-7. He then headbutted one of the officers, C.O. Gallagher. ECF No. 108 ¶ 19; ECF No. 109-7. A spit hood was placed over Shears' head after he made a noise as if he was preparing to spit on the officers. ECF No. 108 ¶ 20; ECF No. 109-7. During the escort back to the cell block, Shears continued to threaten the officers. ECF No. 108 ¶ 21; ECF No. 109-7.

Shears was taken to the back hallway of K Unit to be strip searched before being placed in the cell. ECF No. 108 ¶ 25; ECF No. 109-7; ECF No. 117 ¶ 25. A sheet was placed on the floor of the hallway. Shears was placed on the sheet where his clothes were cut off his body, and a strip search was conducted. ECF No. 108 ¶¶ 27-28; ECF No. 117 ¶¶ 27-28; ECF No. 109-7. Once the search was completed, he was clothed in a tear-resistant smock and escorted to a cell.  ECF No. 108 ¶ 30; ECF No. 117 ¶ 30; ECF No. 109-7.

An investigation pursuant to the Prison Rape Elimination Act ("PREA") was conducted into the propriety of the strip search. ECF No. 108 ¶ 36 (citing ECF No. 108-8). PREA Lieutenant Amanda Diemer conducted the investigation. Based on her review of the video footage, she concluded that there was no merit to Shears' allegations of abuse. She explained: "Staff used the appropriate amount of force to complete the objectives at hand. Inmate Shears was not subjected

---

[5] Shears disputes this fact, claiming that he did not go limp in protest, but rather passed out due to his ingestion of Tylenol and was unconscious rather than non-compliant. ECF No. 117 ¶¶ 14-17. Shears' version of events is wholly contradicted by the video evidence, as discussed more fully herein. The video shows Shears refused orders to stand and return to the cell, instead going limp but remaining conscious, as evidenced, in part, by his continuous spoken protests. ECF No. 109-7.

to voyeurism of other inmates based on the location where the prone strip search took place." ECF No. 108 ¶ 36 (citing ECF No. 108-8 at 5).

### III.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*

Once the moving party has met their initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable

inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 Fed. Appx. 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 Fed. Appx. 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV.    Analysis

### A.    Legal Contours of Fourth Amendment Right of Privacy

"Inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility." *Parkell v. Danberg*, 833 F.3d 313, 324 (3d Cir. 2016) (quoting *Bell*, 441 U.S. at 545). "[A] right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context. Our conclusion 'necessarily entails a balancing of interests.'" *Hudson v. Palmer*, 468 U.S. at 527.

"[T]he Fourth Amendment therefore grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting." *Parkell*, 833 F.3d at 325. In balancing the interests of bodily privacy and prison safety, the Court "must give considerable weight to the 'place in which [the search] is conducted'—prisons being 'places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct,' —and considerable deference to 'the justification for initiating it.'" *Id.* at 326 (quoting *Hudson*, 468 U.S. at 526).

"[I]mpinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." *Id.* at 326. "While a strip search may constitute a 'significant intrusion on an individual's privacy,' *see United States v. Whitted*, 541 F.3d 480, 486 (3d Cir. 2008), in the prison or detention facility setting, where officials conduct searches in a reasonable manner to maintain security and to prevent the introduction of contraband or weapons in the facility, strip searches do not violate the Fourth Amendment." *Fatir v. Phelps*, No. 18-CV-933, 2019 WL 2162720, at *6 (D. Del. May 17, 2019) (citing *Florence v. Board of Chosen Freeholders of Cty. of Burlington*, 621 F.3d 296, 309-11 (3d Cir. 2010)).

Thus, in and of itself, a prison strip search is not unconstitutional. "The Supreme Court has held that prison officials may conduct visual body cavity searches in a reasonable manner." *Millhouse v. Arbasak*, 373 F. App'x 135, 137-38 (3d Cir. 2010) (citing *Bell*, 441 U.S. at 559-60). Furthermore, "the searches, even if embarrassing and humiliating, do not violate the constitution." *Millhouse*, 373 F. App'x at 137-38. *See also, e.g., Del Raine v. Williford*, 32 F.3d 1024, 1038–41 (7th Cir. 1994) (rejecting claim that rectal probe performed in lobby area of prison hospital was "unnecessarily brutal, painful and humiliating"); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th

Cir. 1988) (upholding policy of conducting visual bodily cavity searches every time prisoner leaves or returns to maximum security unit or moves within unit).

        B.     <u>Discussion</u>

Shears contends that the location of the strip search and the removal of his clothes in an area visible to other inmates was unreasonable and violated his Fourth Amendment rights. In support of his motion for summary judgment, Haggerty argues that the evidentiary record, including the video footage, conclusively demonstrates the reasonable nature of the strip search. Thus, it must be determined if the strip search was conducted for legitimate penological purposes or was an unconstitutional violation of Shears' limited right to privacy.

At the heart of Shears' Fourth Amendment claim is Haggerty's decision about the location of the strip search, which Shears claims resulted in his genitals being exposed to other inmates. As evidentiary support for this claim, Shears filed two affidavits: one from himself asserting that inmates were watching and laughing at his naked body during the search, ECF No. 124, and one from Robert Ward, another inmate, ECF No. 129.[6]

Ward's affidavit states that a third inmate, William Taylor, told Ward that "inmates" (it is unclear whether Taylor was one of these inmates) watched and laughed at Shears' exposed genitals during the strip search. *Id.* The affidavit from Ward cannot be considered, however, because it does not comport with the requirements of Federal Rule of Civil Procedure 56(c)(4). As Rule 56(c)(4) provides, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The statements in the affidavit are not

---

[6] Both affidavits were submitted months after his brief in opposition to Haggerty's motion for summary judgment was filed.

based on Ward's personal knowledge but rather, merely state what Taylor told Ward. This represents inadmissible hearsay because it is offered for the truth of the matter asserted. As such, the Court cannot consider Ward's affidavit in resolving Haggerty's motion.

Here, because there is extensive video evidence regarding the events at issue, the Supreme Court's holding in *Scott v. Harris*, 550 U.S. 372 (2007), is significant to the analysis of this claim. In *Scott*, a videotape of the events at issue flatly contradicted the plaintiff's allegations. *Id*. at 379-80. The Court held that: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. See also *Morgan v. Borough of Fanwood*, 680 F. App'x 76, 80 (3d Cir. 2017) ("when, as here, there is reliable video footage of the facts in the record, we view the facts in the light as depicted by the videotape.") With this principle in mind, the Court turns to the video evidence that is available in this case.

Undoubtedly, Shears' affidavit supports his version of the strip search. At the same time, however, the video evidence wholly contradicts his assertions. The Court has reviewed the video and in relevant summary, it depicts the following:

> After Shears is removed from his cell, he is escorted to medical. At this point, he is cooperative. A man, presumably a nurse, takes his vitals. Shears reiterates that he has swallowed a pen and Tylenol. When an order is issued to take Shears back to K block, he becomes upset because he has "stuff in his stomach." He goes limp, stating that "it's not happening like that." Haggerty tells him the decision has been made and if he walks back without fighting, he can avoid a misconduct. Shears refuses to walk. He is then placed in a restraint chair, starts to yell, and then begins to threaten them, e.g., "First chance I get, I'mma cut the f*** out of one of ya'll motherf***ers." He headbutts one of the officers and makes a spitting noise, at which point a spit hood is placed over his head.
>
> As the officers push him in the chair out of medical, he threatens them with physical harm and legal action. On the way to K-block, a correctional officer requests that

the "back hall" be cleared. He also requests a sheet, shears, and a "big open space
to secure the inmate."

They then arrive at the location of the strip search. It is a hallway which dead ends
into a wall which has interior windows and a closed door. One side of the hallway
has a closed door, the other has an open door and interior windows. Lighted areas
are visible on the other side of the windows, but no people are visible in those
spaces. The bottom of the windows is slightly higher than waist height. The areas
with the windows do not appear to be inmate cells. There is no sound other than the
conversations of the officers and Shears.

While the officers wait for shears to cut his clothing, Shears continues to rant and
physically demonstrates agitation. A sheet is laid on the ground. There are 9 C.O.'s
in the hallway. While he is being released from the restraint chair, Shears yells and
complains of assault. Although he claims to be assaulted with scissors, none of the
officers is using scissors at this point. Rather, an officer who is not assisting with
removing Shears, but rather, standing near the camera, displays the two pairs of
shears that he is holding. The officers remove Shears from the chair and place him
on the sheet on his knees, then roll him on his left side. They remove his socks and
then cut off his pants, his shirt, his t-shirt, and his underwear. He informs the camera
that he wants to file a PREA, complaining that he's being sexually exposed in the
hallway. He rolls onto his stomach. Once he is naked, they roll him on his left side
for visual inspection, then return him to his stomach, raise him to his knees, put the
smock in front of him and stand him up. At no point during this process are his
genitals exposed in the direction of the camera. Indeed, he is surrounded by officers.

Shears says that he feels humiliated and indicates that inmates are looking at him.
The direction he is looking when he says that is back out towards the entrance of
the hallway, and when the camera turns in that direction, it depicts a hallway that
doglegs. No inmates or cells are visible. It is not until Shears is walked into the
inmate pod that any other individuals, presumably inmates, can be heard. Several
voices can be heard, but it is not possible to interpret what is being said. No intimate
part of Shears' body, including his buttocks or genitals is exposed. He is walked to
a cell and locked in.

It is well-established that an inmate has a limited right to privacy and prison officials may

conduct strip searches in a reasonable manner. Here, the video evidence conclusively establishes

that given Shears' visit to medical and subsequent threats of violence, there was a legitimate

penological interest in conducting a strip search. Following the decision to take him to a cell on K

unit, Shears became physically and verbally combative with corrections officers, which

necessitated placing him in a restraint chair, applying a spit hood and conducting a prone strip search before placing him in a cell. As the video shows, the search was performed in a reasonable manner in a hallway that dead ends into a wall which has interior windows and a closed door.  The video does not depict the presence of any other inmate during the search and the audio does not reflect any laughter or comments from third parties. At any rate, while the video does not reflect that any inmates were able to observe the strip search, the mere fact that Shears felt embarrassed does not represent a violation of this constitutional rights. Moreover, once Shears entered the cell area, none of the intimate parts of his body were exposed.

Thus, as Shears' version of the facts is completely contradicted by the video, no reasonable jury could believe it, and therefore, the Court cannot adopt that version for purposes of ruling on a motion for summary judgment. Because no reasonable jury could view the video footage and conclude that the strip search was performed in an unconstitutional manner, Haggerty is entitled to judgment as a matter of law.

## V.    Conclusion

For these reasons, the Motion for Summary Judgment of Defendant Lieutenant Stephen Haggerty will be granted, and judgment will be entered in his favor. An appropriate order will follow.


Dated: November 13, 2023                    BY THE COURT:


                                            /s/ Patricia L. Dodge
                                            PATRICIA L. DODGE
                                            UNITED STATES MAGISTRATE JUDGE